## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

PATRICK CATES, BRYAN BUTAKIS
and NELS GORDON, individually and on
behalf of others similarly situated,

             Plaintiffs,

    vs.

SIEMENS INDUSTRY, INC.,

            Defendant.

Case No.: _____

**JURY DEMAND**

## CLASS ACTION COMPLAINT

Plaintiffs Patrick Cates, Bryan Butakis, and Nels Gordon ("Plaintiffs") bring

this action against Defendant Siemens Industry, Inc. ("Siemens"), by and through

their attorneys, individually and behalf of all others similarly situated, and allege as

follows based on upon personal belief as to their own facts, and upon investigation

of counsel as to all other matters:

## INTRODUCTION

1.    This is a class action lawsuit brought by Plaintiffs on behalf of

themselves and a class of individuals who purchased Arc Fault Circuit Interrupters

("AFCI") manufactured by Siemens Industry, Inc.[1]

2.      The purpose of AFCIs is to protect the branch circuit wiring from dangerous arcing faults that could initiate an electrical fire. AFCIs monitor the circuit for the presence of "normal" and "dangerous" arcing conditions.

3.      Siemens' AFCIs contain a defect that causes them to trip when subject to normal arcing conditions, which is referred to as "nuisance tripping."

4.      This action arises from Defendant's failure, despite its longstanding knowledge of this material defect, to disclose to Plaintiffs and other consumers that its AFCIs suffer from a defect that causes excessive nuisance tripping.

5.      Significantly, and as a result of the defective nature of the AFCIs, they excessively trip and disable all outlets connected to the breakers. This causes appliances and devices such as refrigerators and HVAC units to turn off. Some consumers have reported that they fear leaving their home for extended periods of times because the AFCIs trip multiple times a day, which would cause the interior temperature of the home to excessively fluctuate, and cause food stored in refrigerators to spoil.

6.      Owners of the AFCIs have communicated with Siemens and their

---

[1] Plaintiffs reserve the right to amend the definition of the class after conducting discovery.

agents to request that Siemens remedy and/or address the defective AFCIs at no

expense. Siemens has failed and/or refused to do so.

7.    As a result of Siemens' unfair, deceptive, and/or fraudulent business

practices, consumers, including Plaintiffs, have suffered an ascertainable loss of

money and/or property.

8.    As a result of the defective nature of the AFCIs, and the considerable

monetary costs associated with attempting to repair or replace them, Plaintiffs and

Class members have suffered injury in fact, incurred damages, and have otherwise

been harmed by Siemens' conduct.

9.    Accordingly, Plaintiffs bring this action to redress Siemens' violations

of California's Consumers Legal Remedies Act, California's Unfair Competition

Law, the Song-Beverly Consumer Warranty Act, Pennsylvania's Unfair Trade

Practices and Consumer Protection Law, Washington Consumer Protection Act,

and also to seek recovery for Siemens' breach of express and implied warranties,

common law fraud, and unjust enrichment.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action pursuant to

28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are

100 or more class members, (ii) there is an aggregate amount in controversy

exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Siemens is headquartered in this district, transact business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be citizens of this district. Additionally, Siemens has advertised in this district and have received substantial revenue and profits from its sales of AFCIs in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

12.     This Court has general personal jurisdiction over Siemens because it has its corporate headquarters and offices located in this judicial district, has conducted substantial business in this judicial district, and intentionally and purposefully placed the AFCIs into the stream of commerce within the Northern District of Georgia and throughout the United States.

## THE PARTIES

### Plaintiff Patrick Cates

13.     Plaintiff Patrick Cates is a citizen of the State of California and resides

in Newbury Park, California.

14.    In or around October 2021, Plaintiff moved into his new construction vacation home located in Bridgeport, California, and as part of the construction of his new home, he purchased and had Siemens' AFCIs installed.

15.    Starting from the time Plaintiff moved into his new home, the AFCIs suffered from excessive nuisance tripping. This nuisance tripping would occur regularly and power off his power saw, garbage disposal and washer/dryer.

16.    Plaintiff has contacted his home builder to request warranty service to request that the AFCIs in his home be replaced with non-defective breakers at no cost. To date, no AFCIs have been replaced in his home, despite those AFCIs also suffering from nuisance tripping.

17.    Had Siemens disclosed that the AFCIs were defective, Plaintiff Cates would not have purchased the AFCIs, or would have paid less for them.

18.    Plaintiff Cates has suffered an ascertainable loss as a result of Siemens' omissions associated with the AFCIs, including, but not limited to, repair and replacement costs, future attempted repairs, and diminished value of his home.

19.    Neither Siemens, nor any of its agents, dealers, or other representatives, informed Plaintiff Cates of the existence of the defective nature of the AFCIs.

**Plaintiff Bryan Butakis**

20.    Plaintiff Bryan Butakis is a citizen of the Commonwealth of Pennsylvania and resides in West Chester, Pennsylvania.

21.    In or around July of 2021, Plaintiff moved into his new construction home in West Chester, Pennsylvania, and as part of the construction of his new home, he purchased and had Siemens' AFCIs installed.

22.    Starting from the time Plaintiff moved into his new home, the AFCIs suffered from excessive nuisance tripping. This nuisance tripping would occur daily and power off his refrigerator, among other devices and appliances.

23.    Plaintiff has contacted both Siemens and his home builder to request warranty service on numerous occasions to request that the AFCIs in his home be replaced with non-defective breakers at no cost. To date, only 5 AFCIs have been replaced in his home, and his requests to replace the remaining 10 AFCIs have been denied, despite those AFCIs also suffering from nuisance tripping.

24.    Had Siemens disclosed that the AFCIs were defective, Plaintiff would not have purchased the AFCIs, or would have paid less for them.

25.    Plaintiff has suffered an ascertainable loss as a result of Siemens' omissions associated with the AFCIs, including, but not limited to, repair and replacement costs, future attempted repairs, and diminished value of his home.

26.     Neither Siemens, nor any of its agents, dealers, or other representatives, informed Plaintiff of the existence of the defective nature of the AFCIs.

**Plaintiff Nels Gordon**

27.     Plaintiff Nels Gordon is a citizen of the State of Washington and resides in Ocean Shores, Washington.

28.     In or around April 2022, Plaintiff moved into a home located in Ocean Shores, Washington, which had Siemens AFCIs installed.

29.     Starting from the time Plaintiff Gordon moved into his new home, the AFCIs suffered from excessive nuisance tripping. This nuisance tripping would occur daily and power off his devices and appliances.

30.     Had Siemens disclosed that the AFCIs were defective, Plaintiff Gordon would not have purchased his home, or would have paid less for the home.

31.     Plaintiff Gordon has hired an electrician to diagnose whether his AFCIs are defective, and was advised to replace all of the AFCIs installed in his home due to the defective AFCIs.

32.     Plaintiff has suffered an ascertainable loss as a result of Siemens' omissions associated with the AFCIs, including, but not limited to, repair and replacement costs, future attempted repairs, and diminished value of his home.

33.     Neither Siemens, nor any of its agents, dealers, or other representatives, informed Plaintiff Gordon of the existence of the defective nature of the AFCIs.

## TOLLING OF STATUTES OF LIMITATION

34.     Any applicable statute(s) of limitations has been tolled by Siemens' knowing and active concealment and denial of the facts alleged herein. Plaintiffs and members of the Class could not have reasonably discovered the true, latent defective nature of the AFCIs until shortly before this class action litigation was commenced.

35.     Siemens was and remains under a continuing duty to disclose to Plaintiffs and members of the Class the true character, quality, and nature of the AFCIs and that they will require costly repairs and replacements. As a result of the active concealment by Siemens, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

36.     AFCIs employ advanced electronic technology to monitor circuits for the presence arcing conditions.

37.     Arcing can occur when a circuit becomes overloaded and overheats. The overheating can cause damage to the circuit breaker and its connection to the

bus. Damaged circuit breakers can malfunction and allow electricity to flow between their connections instead of tripping (which shuts off the electrical flow).

38.    The AFCIs are intended to monitor and distinguish between normal and dangerous arcing conditions. A normal arcing condition can occur when certain equipment creates an arcing condition, such as a vacuum cleaner, and are considered harmless. A dangerous arcing condition can occur for a variety of reasons, including damage to the electrical conductor insulation.

39.    When the AFCI detects a dangerous arcing condition, it is designed to remove the arcing condition before it can become a fire hazard. This is done by breaking the circuit, which cuts power and prevents electrical fires.

40.    Siemens' defective AFCIs are unable to adequately distinguish between normal arcing conditions and dangerous arcing conditions, which causes them to suffer from "nuisance tripping."

41.    Nuisance tripping refers to the breaker tripping for reasons other than preventing a dangerous arcing condition (i.e. tripping due to normal arcing conditions).

42.    When a breaker trips, such as with nuisance tripping, the only way to restore power is to manually reset the breaker in the circuit breaker.

43.    As a result of the defective AFCIs, consumers frequently lose power

to portions or all of their home appliances and other devices, and are forced to

manually reset the breaker to restore power. For some consumers, including

Plaintiffs, this often occurs daily.

## CLASS ACTION ALLEGATIONS

44.    Plaintiffs bring this action on behalf of themselves, and on behalf of

the following nationwide class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or

23(b)(3). Specifically, the nationwide class consists of the following:

> **Nationwide Class:**
> All persons or entities in the United States who purchased Siemens' AFCIs
> (the "Nationwide Class").

45.    In the alternative to the Nationwide Class, and pursuant to FED. R.

CIV. P. 23(c)(5), Plaintiffs seek to represent the following state classes only in the

event that the Court declines to certify the Nationwide Class above:

> **California Class**
> All persons or entities in California who purchased Siemens' AFCIs (the
> "California Class").
>
> **Pennsylvania Class:**
> All persons or entities in Pennsylvania who purchased Siemens' AFCIs (the
> "Pennsylvania Class").
>
> **Washington Class:**
> All persons or entities in Washington who purchased Siemens' AFCIs (the
> "Washington Class").

46.    Together, the California Class, Pennsylvania Class, and Washington

Class shall be collectively referred to herein as the "State Classes" and together with the Nationwide Class, the "Class" or "Classes." Excluded from the Classes are Siemens, its affiliates, employees, officers, and directors, persons, or entities that purchased the AFCIs for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Class definitions.

47.     <u>Numerosity</u>: Upon information and belief, the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Siemens and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe that thousands of AFCIs have been sold in each of the states that are the subject of the Classes.

48.     <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Classes. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

      a.  whether the AFCIs are defective and suffer from nuisance tripping;

      b.  whether the AFCIs contain a manufacturing or design defect;

      c.  whether the defect is common to all or some of the AFCIs;

      d.  whether Siemens knowingly failed to disclose the existence and cause of the defect in the AFCIs;

e. whether Siemens' conduct violates the consumer protection statutes alleged herein;

f. whether, as a result of Siemens' omissions of material facts related to defective AFCIs, Plaintiffs and members of the Class have suffered ascertainable loss of monies and/or property and/or value;

g. whether, as a result of Siemens' omissions of material facts related to defective AFCIs, Plaintiffs and members of the Class have suffered an increased cost of maintenance related to the AFCIs; and

h. whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

49.    Typicality: All of the Plaintiffs' claims are typical of the claims of the Classes since Plaintiffs purchased the defective AFCIs, as did each member of the Class. Furthermore, Plaintiffs and all members of the Classes sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Siemens' wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

50.    Adequacy: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Classes that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their

counsel.

51.    <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Classes. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Siemens' conduct. It would be virtually impossible for members of the Classes to individually and effectively redress the wrongs done to them. Even if the members of the Classes could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Classes can be readily identified and notified based on, *inter alia*, Siemens' internal records.

52.    Siemens has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## VIOLATIONS ALLEGED

### COUNT I
**Breach of the Implied Warranty of Merchantability**
**(On Behalf of the Nationwide Class, or alternatively, the State Classes)**

53.    Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

54.    Siemens was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the AFCIs. Siemens knew or had reason to know of the specific use for which the AFCIs were purchased.

55.    Siemens provided Plaintiffs and the class with an implied warranty that the AFCIs and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. However, the AFCIs are not fit for their ordinary purpose because, *inter alia*, they are defective and suffer from excessive nuisance tripping.

56.    Contrary to the applicable implied warranties, the AFCIs at the time of sale and thereafter were not fit for their ordinary and intended purpose of being used as electrical breakers in homes and other structures of Plaintiffs and the Class.

57.    Siemens' actions, as complained of herein, breached the implied warranty that the AFCIs were of merchantable quality and fit for such use as

electrical breakers.

**COUNT II**
**Breach of Express Warranty**
**(On Behalf of the Nationwide Class, or alternatively, the State Classes)**

58.     Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

59.     Siemens provided Plaintiffs and the Class with an express warranty for the AFCIs whereby Siemens agreed to repair or replace the defective AFCIs for one year from the initial operation of the goods but not more than eighteen months from Siemens' shipment of the goods.

60.     The express warranty became part of the basis of the bargain between Plaintiffs and the Class and Siemens.

61.     Siemens breached its express warranties by failing to repair or replace the defective AFCIs.

62.     The terms of Siemens' express warranty are both substantively and procedurally unconscionable. Siemens' attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Siemens' warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

63.    The time limits contained in Siemens' warranty are also

unconscionable and inadequate to protect Plaintiffs and the Class Members.

Among other things, Plaintiffs and Class Members had no meaningful choice in

determining these time limitations the terms of which unreasonably favored

Siemens. A gross disparity in bargaining power existed between Siemens and

Plaintiffs and the Class Members, and Siemens knew or should have known that

the AFCIs were defective at the time of sale and would fail well before their

useful lives.

64.    Plaintiffs provided written notice to Siemens of its breach of

express warranties on May 11, 2022.

65.    Plaintiffs have complied with all obligations under the warranty, or

otherwise have been excused from performance of said obligations as a result of

Siemens conduct described herein.

66.    Plaintiffs and the Class Members are entitled to legal and equitable

relief against Siemens, including damages, consequential damages, specific

performance, attorney fees, costs of suit, and other relief as appropriate.

## COUNT III
### Violations of the Magnuson-Moss Warranty Act
### (On Behalf of the Nationwide Class, or alternatively, the State Classes)

67.    Plaintiffs and the Classes incorporate by reference each preceding

and succeeding paragraph as though fully set forth at length herein.

68.     The Magnuson-Moss Warranty Act ("MMWA") provides a private right of action by purchasers of consumer products against retailers who, *inter alia*, fail to comply with the terms of a written or implied warranty. 15 U.S.C. § 2310(d)(1). As alleged herein, Siemens have failed to comply with its implied warranty of merchantability with regard to the AFCIs.

69.     The AFCIs are "consumer product[s]", as that term is defined in 15 U.S.C. § 2301(1).

70.     Plaintiffs and each member of the Classes defined above are "consumer[s]", as that term is defined in 15 U.S.C. § 2301(3).

71.     Siemens is a "supplier" and "warrantor," as those terms are defined in 15 U.S.C. § 2301(4)-(5).

72.     The MMWA provides a cause of action for breach of a written or implied warranty or other violations of the Act. 15 U.S.C. § 2310(d)(1).

73.     Siemens' warranties are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

74.     Siemens provided Plaintiffs and the other Class members with an implied warranty of merchantability in connection with the purchase of the AFCIs that is an "implied warranty" within the meaning of the MMWA, 15

U.S.C. § 2301(7). As part of the implied warranty of merchantability, Siemens warranted that the AFCIs were fit for their ordinary purpose as electrical breakers, would pass without objection in the trade as manufactured and marketed, and were adequately contained, packaged, and labeled.

75.     Siemens breached these implied warranties and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the AFCIs share common defects in that they suffer from the excessive nuisance tripping.

76.     Siemens was provided notice of the claims raised by Plaintiffs and was afforded a reasonable opportunity to cure. Siemens failed to cure in that it has not offered an effective repair or replacement breakers to Plaintiffs and the class. Until Plaintiffs' representative capacity is determined, notice and opportunity to cure through Plaintiffs, and on behalf of the Class, can be provided under 15 U.S.C. § 2310(e).

77.     Siemens' acts and omissions in violation of the MMWA are "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," and they are unlawful. 15 U.S.C. §§ 2310(b), 45(a)(1).

78.     Plaintiffs and the members of the Class have suffered, and are

entitled to recover, damages as a result of Siemens' breach of implied warranties and violations of the MMWA.

79.    Plaintiffs also seek an award of costs and expenses, including attorneys' fees in connection with the commencement and prosecution of this action under 15 U.S.C. § 2310(d)(2). Plaintiffs and the prospective Class intend to seek such an award, including expert witness costs and other recoverable costs, as prevailing consumers at the conclusion of this lawsuit.

**COUNT IV**
**Breach of Implied Warranty Pursuant to the Song-Beverly Act**
**(On Behalf of the California Class)**

80.    Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

81.    Plaintiff Cates brings this claim on behalf of himself and on behalf of the members of the California Class.

82.    At all relevant times, Siemens was the manufacturer, distributor, warrantor and/or seller of the AFCIs. Siemens knew or should have known of the specific use for which the ACFIs were purchased.

83.    Siemens provided Plaintiff Cates and the California Class Members with an implied warranty that the AFCIs, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. The

AFCIs, however, are not fit for their ordinary purpose because, *inter alia*, the they suffer from an inherent defect at the time of sale that causes the AFCIs to suffer from excessive nuisance tripping. As such, the AFCIs were incapable of being used for their intended purpose.

84.    Siemens impliedly warranted that the AFCIs were of merchantable quality and fit for such use. This implied warranty included, *inter alia*, a warranty that the AFCIs were manufactured, supplied, distributed, and/or sold by Siemens were reliable for use as breakers and would not prematurely fail.

<u>**COUNT V**</u>
**Violation of California's Consumer Legal Remedies Act,**
**California Civil Code sections 1750, *et seq.***
**(On Behalf of the California Class)**

85.    Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

86.    Plaintiff Cates brings this claim on behalf of himself and on behalf of the members of the California Class.

87.    Defendant is a "person" as defined by California Civil Code § 1761(c).

88.    Plaintiff Cates and the members of the California Class are "consumers" within the meaning of California Civil Code § 1761(d).

89.    By failing to disclose and concealing the defective nature of the

- 20 -

AFCIs from Plaintiff Cates and prospective Class members, Defendant violated California Civil Code § 1770(a), as it represented that the AFCIs had characteristics and benefits that they do not have, and represented that the breakers were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§ 1770(a)(5), (7).

90.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

91.    Defendant knew that the AFCIs suffered from an inherent defect, were defectively manufactured, would fail prematurely, and were not suitable for their intended use.

92.    Defendant was under a duty to Plaintiff Cates and the California Class members to disclose the defective nature of the AFCIs and/or the associated repair or replacement costs because: (i) Defendant was in a superior position to know the true state of facts about the defective nature of the AFCIs; (ii) Plaintiff Cates and the Class members could not reasonably have been expected to learn or discover that their AFCIs were defective until they experienced excessive nuisance tripping; and (iii) Defendant knew that Plaintiff

Cates and the Class members could not reasonably have been expected to learn or discover the AFCI defect.

93.    In failing to disclose the defective nature of the AFCIs, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

94.    The facts concealed or not disclosed by Defendant to Plaintiff Cates and the California Class members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the AFCIs (or homes built with them) or to pay a lesser price. Had Plaintiff and other California Class members known that the AFCIs were defective, they would not have purchased them (or homes built with them) or would have paid less for them.

95.    Plaintiff Cates and the California Class members are reasonable consumers who do not expect the AFCIs installed in their homes to fail prematurely. This is the reasonable and objective consumer expectation relating to the AFCIs.

96.    As a result of Defendant's conduct, Plaintiff Cates and California Class Members have been harmed and have suffered actual damages in that the AFCIs have experienced and will continue to experience excessive nuisance

tripping and failures.

97.    As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff Cates and California Class members have suffered and will continue to suffer actual damages.

98.    Plaintiff Cates and the California Class are entitled to equitable relief.

99.    On or about May 11, 2022, Plaintiff Cates provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) concerning the defective AFCIs.

100.   At this time, Plaintiff Cates requests only injunctive relief under the CLRA.  After the 30-day notice period expires, Plaintiff Cates will amend the Complaint to seek monetary damages under the CLRA.

## COUNT VI
### Violation of California Business & Professions Code § 17200, *et seq.*
### (On Behalf of the California Class)

101.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

102.   Plaintiff Cates brings this cause of action on behalf of himself and on behalf of the California Class.

103.   California Business & Professions Code § 17200 prohibits acts of

"unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

104.   Plaintiff Cates and the California Class members are reasonable consumers who do not expect their AFCIs to experience excessive nuisance triping.

105.   Defendant knew that the AFCIs suffered from inherent defects, were defectively manufactured, would fail prematurely, and were not suitable for their intended use.

106.   In failing to disclose the defective nature of the AFCIs, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

107.   Defendant was under a duty to Plaintiff Cates and the California Class members to disclose the defective nature of the AFCIs: (i) Defendant was in a superior position to know the true state of facts about the defective AFCIs; (ii) Defendant made partial disclosures about the quality of the AFCIs without revealing the defective nature of them; (iii) Defendant actively concealed the defective nature of the AFCIs from Plaintiff Cates and the California Class.

108.   The facts concealed or not disclosed by Defendant to Plaintiff Cates and the California Class members about the defective AFCIs are material

in that a reasonable person would have considered them to be important in deciding whether to purchase them (or homes built with them). Had Plaintiff Cates and other California Class members known that the AFCIs were defective, then Plaintiff Cates and the other California Class members would not have purchased them (or homes built with them), or would have paid less for them.

109.   Defendant continued to conceal the defective nature of the AFCIs even after Class members began to report problems. Indeed, Defendant continues to cover up and conceal the true nature of the problem.

110.   By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

111.   Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

112.   As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff Cates and the California Class have suffered and will continue to suffer actual damages.

113.   Defendant should be required to make restitution to Plaintiff Cates and the California Class pursuant to §§ 17203 and 17204 of the Business &

Professions Code.

## COUNT VII
**Violation of Pennsylvania's Unfair Trade Practices and
Consumer Protection Law
(On Behalf of the Pennsylvania Class)**

114.    Plaintiffs and the Classes incorporate by reference each preceding and

succeeding paragraph as though fully set forth at length herein.

115.    Plaintiff Butakis brings this cause of action on behalf of himself

and on behalf of the members of the Pennsylvania Class.

116.    Plaintiff Butakis and the Pennsylvania Class members purchased

their AFCIs primarily for personal, family or household purposes within the

meaning of 73 P.S. § 201-9.2.

117.    All of the acts complained of herein were perpetrated by Siemens

in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

118.    794.    The Pennsylvania Unfair Trade Practices and Consumer

Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or

practices, including: (a) "Representing that goods or services have . . .

characteristics, . . . [b]enefits or qualities that they do not have;" (b)

"Representing that goods or services are of a particular standard, quality or

grade . . . if they are of another;" (c) "Advertising goods or services with intent

not to sell them as advertised;" and (d) "Engaging in any other fraudulent or

deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4). Siemens engaged in unlawful trade practices, and unfair or deceptive acts or practices that violated Pennsylvania CPL.

119.   Siemens participated in unfair or deceptive trade practices that violated the Pennsylvania CPL as described below and alleged throughout the Complaint. By failing to disclose the defective nature of the AFCIs, by concealing the defect, by marketing its AFCIs as reliable and of high quality, Siemens knowingly and intentionally misrepresented and omitted material facts in connection with the sale of the AFCIs. Siemens' systematically concealed, suppressed, or omitted material facts relating to the AFCIs.

120.   Siemens also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the AFCIs.

121.   Siemens' unfair and deceptive acts or practices occurred repeatedly in Siemens' trade or business and were capable of deceiving a substantial portion of the purchasing public.

122.   Had Plaintiff Butakis and the Pennsylvania Class members known that the AFCIs were defective and suffered from excessive nuisance tripping, they would not have purchased the AFCIs, or would have paid less for them. Plaintiff did not receive the benefit of their bargain as a result of Siemens' misconduct.

123.   Siemens owed Plaintiff Butakis and the Pennsylvania Class members a duty to disclose the truth about the AFCIs because Siemens: (a) possessed exclusive knowledge of the defect; (b) intentionally concealed the foregoing from Plaintiff Butakis and the Pennsylvania Class members; and/or (c) made incomplete representations regarding the quality, and durability of the AFCIs, while purposefully withholding material facts that contradicted these representations.

124.   Plaintiff Butakis and the Pennsylvania Class members suffered injury in fact to a legally protected interest. As a result of Siemens' conduct, Plaintiff Butakis and the Pennsylvania Class members were harmed and suffered actual damages because they purchased AFCIs that did not perform as advertised and expected.

125.   As a direct and proximate result of Siemens' unfair or deceptive acts or practices, Plaintiff Butakis and the Pennsylvania Class members suffered

and will continue to suffer injury in fact and/or actual damages.

126.   Siemens is liable to Plaintiff Butakis and the Pennsylvania Class members for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs under 73 P.S. § 201-9.2(a). Plaintiff Butakis and the Pennsylvania Class members are also entitled to an award of punitive damages given that Siemens' conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

**COUNT VIII**
**Violation of the Washington Consumer Protection Act**
**(On Behalf of the Washington Class)**

127.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

128.   Plaintiff Gordon brings this cause of action on behalf of himself and on behalf of the Washington Class.

129.   Siemens is a "person" within the meaning of the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.010(1), and conducts "trade" and "commerce" within the meaning of the WCPA, WRC § 19.86.010(2).

130.   Plaintiff Gordon and the Washington Class members are "persons" within the meaning of the WCPA, Wash. Rev. Code § 19.86.010(1).

131.    Siemens' actions are unfair and/or deceptive within the meaning of the WCPA in that Siemens has engaged in deception, fraud, unfair practices, and concealment by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff Gordon and the Washington Class members that the AFCIs are defective (and the costs and diminished value of the AFCIs as a result of Siemens' conduct) and, as such, the AFCIs were not suitable for their intended use, as described throughout this Complaint. Such false advertisements were material to Plaintiff Gordon and the Washington Class members in deciding to purchase Siemens' AFCIs.

132.    Siemens unfair or deceptive acts or practices have occurred in its trade or business, and Siemens was and is capable of deceiving a substantial portion of the public.

133.    The facts concealed or not disclosed by Siemens to Plaintiff Gordon and the Washington Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Siemens' breakers or pay a lesser price. Had Plaintiffs Gordon and the Washington Class members known about the defective nature of the AFCIs and that they suffered from excessive nuisance tripping, they would not have purchased the AFCIs or would have paid less for them.

134.   Siemens' general course of conduct has an impact on the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

135.   As a direct and proximate result of Siemens' actions described above, Plaintiff Gordon and the Washington Class members have been injured in fact and suffered damages, and seek relief in the form of actual damages, treble damages, and reasonable attorneys' fees, pursuant to Wash. Rev. Code § 19.86.090.

### COUNT IX
**Common Law Fraud**
**(On Behalf of the Nationwide Class and State Classes)**

136.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

137.   Siemens made material omissions concerning a presently existing or past fact. For example, Siemens did not fully and truthfully disclose to their customers the true nature of the inherent defect with the AFCIs, which was not readily discoverable until after the AFCIs were purchased. As a result, Plaintiffs and the other Class members were fraudulently induced purchase the AFCIs, which suffer from excessive nuisance tripping.

138.   These omissions were made by Siemens with knowledge of their

falsity, and with the intent that Plaintiffs and Class members rely upon them.

139.   Plaintiffs and Class members reasonably relied on these omissions and suffered damages as a result.

## COUNT X
## Unjust Enrichment
## (On Behalf of the Nationwide Class and State Classes)

140.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

141.   Plaintiffs and Class members conferred a benefit on Siemens.

142.   Siemens had knowledge that this benefit was conferred upon it.

143.   Siemens has been and continue to be unjustly enriched at the expense of Plaintiffs, and its retention of this benefit under the circumstances would be inequitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes, respectfully request that this Court:

A.   determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Classes as defined above;

B.   appoint Plaintiffs as the representatives of the Classes and their counsel as Class Counsel;

C.   award all actual, general, special, incidental, statutory, punitive, and

consequential damages to which Plaintiffs and Class members are entitled;

D.     award pre-judgment and post-judgment interest on such monetary relief;

E.     grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Siemens to repair, recall, and/or replace the AFCIs and provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the defect(s);

F.     award reasonable attorney's fees and costs; and

G.     grant such further relief that this Court deems appropriate.

Dated: May 13, 2022

Respectfully submitted,


*/s/ E. Adam Webb*

E. Adam Webb
G. Franklin Lemond, Jr.
**WEBB, KLASE & LEMOND, LLC**
1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
Tel: (770) 444-9325
Facsimile: (770) 217-9950
Adam@WebbLLC.com
Franklin@WebbLLC.com

Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
Lori G. Kier
**SAUDER SCHELKOPF**
1109 Lancaster Avenue
Berwyn, PA 19312
Tel: (610) 200-0581
Facsimile: (610) 421-1326
jgs@sstriallawyers.com
mds@sstriallawyers.com
jbk@sstriallawyers.com
lgk@sstriallawyers.com

***Attorneys for Plaintiffs***